Battle, J.
 

 The question involved in this case is, whether the common law presumption of payment, which is assumed to prevail in Virginia, where the bond was executed, or that of this State, in which the action has been brought, shall form the rule of decision. In other words, it is a question between the
 
 lex looi contraetus
 
 and the
 
 lex fori;
 
 and, in our opinion, the weight of authority is decidedly in favor of the latter. It is admitted that, “ in regard to the merits and rights involved in actions, the law of the place where they originated, is to govern; but that all forms of remedies and judicial proceedings are to be according to the law of the place where the action is instituted, without any regard to the domicil of the parties, the origin of the right, or the country of the act.” Story’s Conf. of Laws, sec. 558. So, that the true enquiry is, whether the time which raises the presumption of the payment of the bond, regards the rights and merits of the action, or is involved in the form of the remedy, and judicial proceedings which have been instituted for the recovery of the debt. Now, it cannot be disputed that the forins of process, and the rules of pleading, appertain to the remedy, and that with regard to them, the
 
 lex fori
 
 must prevail.
 

 The plaintiff’s counsel virtually admits this by not objecting to the plea of payment; for it is well known that, at common law, a bond being under seal, could not be discharged, except by an instrument of as high a nature, to wit, a release under seal. Hence, the plea of payment was not allowed to an action 'of debt on a bond, until the statute of 4th Anne,
 
 *396
 
 ch. 16, sec. 12, authorised its use. If then, the common law is in force in Virginia, unaffected by the statute of Anne, and our rules of pleading had to be governed by it, the plea of payment would have to be rejected, for which nobody contends. As we have a right to apply our own rules of pleading to an action brought here upon a foreign contract, we think it clear that we must decide upon the merits of the controversy by our own rules of evidence. The mischiefs of a contrary doctrine are obvious ; for if we were to admit evidence according to the
 
 lex loei contractus,
 
 “ one of our citizens might,” as was forcibly said by the defendant’s counsel, “ be affected by the testimony of negroes, or other persons, whom it is the settled policy of our law to reject as witnesses.” It cannot be denied that, when lapse of time is used as a defence against a bond, it is upon the ground of its being evidence of payment. After a long period, the law recognising the difficulty of procuring direct testimony, allows the party to resort to, and avail himself of, presumptive evidence ; and unless it be rebutted by counter evidence, it may have all the weight of the most positive proof. Defences founded upon presumptions being thus liable to be met and repelled by counter proofs, are not so strong as statutes of limitation, which bar the remedy, and sometimes the right, after certain periods. And yet we find that all these are regarded as affecting the “forms of remedies and judicial proceedings.” Thus, Mr. Justice Story, in his Conflict of Laws, section 516, says, “In regard to statutes of limitation, or prescription, there is no doubt that they are strictly questions affecting the remedy, and not questions upon the merits. They go
 
 ad litis ordvna-üonem,
 
 and not
 
 ad litis
 
 deeisionem, in a just juridical sense. The object of them is to fix certain periods within which all suits shall be brought in the Courts of a State, whether they be brought by subjects, or by foreigners. And there can be no reason, and no sound policy, in allowing higher or more_ extensive' privileges to foreigners, than to subjects.” Again, in section 517, he says : “ It has accordingly become a formu-lary in international jurisprudence, that all suits must be
 
 *397
 
 brought within the period prescribed by the local law,
 
 ¿ex -fori,)
 
 otherwise the suit will be barred ; and this rule is equally as well recognised in foreign jurisprudence, as it is in the .common law. Not, indeed, that there areno diversities of opinion upon this subject'; but the doctrine is established by a decisive current of well considered authorities.” These principles are founded in justice, as well as convenience, and our Courts will always be found ready to adopt, and give effect to them. Thus, in the case of
 
 Watson
 
 v.
 
 Orr,
 
 3 Dev. Rep. 161, the Court said, that “ the law of the country where - a contract is made, is the rule by which the validity of it, its exposition, and consequences, are to be determined.” But if a suit be brought upon it in the Courts of this State, any defence which the defendant may be able to make, must, as we think, be availed of, according to our rules of pleading, and be established according to our rules of evidence. The same principles will be found to prevail in the jurisprudence of our sister States. Atleast the diligent research of the counsel for the plaintiff has failed to bring to our attention a case in which a different doctrine has been the rule of decision. The case of
 
 Horton
 
 v.
 
 Horner,
 
 cited from the 16th Ohio Rep. 145, has a head-note which seems to make it an exception. The' note is, that “ a contract made in the State of New York, for the payment of money in that State, the maker residing there at the time of its execution, is controlled by the laws, and aftected by the statute of limitations of that State.” In looking into the opinion of the Court,- we find that the decision was founded upon a statute of the State of Ohio, (cited as se,ction*4th of the statute, Swan 555,) which declared that all actions founded on a contract between parties
 
 residing without this Sicote at the time such contract was made,
 
 and which are barr,ed by the laws of such State, shall be barred when brought in this State.” The case, then, furnishes a strong implication that, but for the statute of Ohio, which gave effect to the New York statute of limitations, it would have been governed by the ordinary statute of limitations of Ohio, and
 
 *398
 
 is thus an authority against the argument which it was intended to support.
 

 There is a class of cases, the doctrine of which may, by some persons, be supposed to be at variance with that which we suppose to have been settled by the arguments and authorities which we have produced. It is, where personal property is adversely held in a State, for a period beyond that prescribed by the laws of that State, and after that period has elapsed, the possessor removes into another State, which has a larger period of limitations, or is without any statute of limitations, and it has been held that the title of the possessor cannot be impugned in the latter State. See
 
 Shelby
 
 v.
 
 Guy,
 
 11 Wheat. Rep. 361. It is manifest that there is a marked distinction between the effect of a statute which gives a right, and one which merely bars a remedy. It may be the duty of every State, upon the principle of comity, to protect a right or title, no matter how acquired, under the laws of another State, whether by the direct and immediate effect of a contract, or an act, or by an act coupled with long possession ; but a very different question is presented when the rules of pleading, and evidence of the
 
 lex
 
 fori, are involved. These rules are sc various and. minute in different countries, that it would be utterly impracticable for the judicial officers of any one country or State, to ascertain them, and use them as the means of decision. Its own rules of "pleading and evidence, the Judges may, by long study and practice, learn and apply, with some hope of doing justice to. the suitors, and by these rides alone ought they to be governed.
 

 Our conclusion, then, is, that his Honor erred in holding that the presumption of payment did not arise upon the lapse of more than ten years after the cause of action accrued on tiie bond in question, as prescribed in our statute of 1826, (Bevised Code, cli. 65, sec. 18.) For this error the judgment must be reversed, and a
 
 venire de novo
 
 awarded.
 

 Teh Cueiam. Judgment reversed.